1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                  IN AND FOR THE EASTERN DISTRICT OF WASHINGTON
 2   -------------------------------
 3                                  )
     UNITED STATES OF AMERICA,      )
 4                                  )
                         Plaintiff, )   NO. 2:10-CR-2077-RMP-1
 5                                  )
              -vs-                  )
 6                                  )
     JAMES DEAN CLOUD,              )
 7                                  )   March 1, 2011
                         Defendant. )   Yakima, Washington
 8   -------------------------------

 9

10                AMENDED VERBATIM REPORT OF PROCEEDINGS
                               SENTENCING
11
                  BEFORE THE HONORABLE ROSANNA MALOUF PETERSON
12                       UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   FOR THE PLAINTIFF:            JAMES A. GOEKE
                                   Assistant U.S. Attorney
15                                 402 E. Yakima Ave.
                                   Yakima, WA 98901
16
     FOR THE DEFENDANT:            ALEX B. HERNANDEZ
17                                 Attorney at Law
                                   306 E. Chestnut
18                                 Yakima, WA 98901

19

20
       REPORTED BY:                Lynette Walters, RPR, CRR, CCR
21                                 Official Court Reporter
                                   P. O. Box 845
22                                 Yakima, WA  98907
                                   (509) 573-6613
23
       Proceedings reported by mechanical stenography; transcript
24     produced by computer-aided transcription.

25
```

# Errata Sheet

Case Name:

Case Number:

The following correction(s) has been made:

by:_____          Date: _____
      Official Court Reporter

```
 1              (MARCH 1, 2011, 9:12 A.M.)
 2              THE COURT:  The matter before the court is
 3   United States versus James Cloud, Case No. CR-10-2077.  This is
 4   the time set for sentencing.
 5              Mr. Goeke.
 6              MR. GOEKE:  Good morning, Your Honor.
 7              THE COURT:  Mr. Hernandez.
 8              MR. HERNANDEZ:  Good morning, Your Honor.
 9              THE COURT:  Mr. Cloud.
10              THE DEFENDANT:  Good morning.
11              THE COURT:  Good morning.
12              There are a couple of issues that I would like to
13   review before I hear from counsel in this matter.
14              First of all, Mr. Cloud, I want to make sure that you
15   have had an opportunity to read the presentence investigation
16   report, and that you had an opportunity to review that with
17   Mr. Hernandez.  In addition, I want to make sure that you have
18   seen the amended report, and I want to discuss some of the
19   objections that were filed on your behalf.
20              Specifically, let's go to Objections 1, 2, 3, which
21   are that the warrants -- and this refers to the presentence
22   report in paragraphs 120 to 123 on page 20 of the PSI.  The
23   defendant's objection is that the information relating to the
24   active warrants out of Las Vegas, Nevada, did not pertain to
25   you.  I agree with you, and I will have that information
```

1  stricken from the presentence report.  So to that extent, I am
2  granting -- I suppose it's granting the objection.  The report
3  will be amended to that.
4        THE DEFENDANT:  Thank you.
5        THE COURT:  Objection No. 2, in addition, referred to
6  reference of being in state custody, and you indicated that that
7  was tribal custody.  Even though it does not affect any of the
8  sentencing range, I do agree with you on that also, and will
9  grant that that be corrected.  I believe that actually is
10 already corrected in the amended presentence report.
11       MR. HERNANDEZ:  That's correct, Your Honor.
12       THE COURT:  The objection -- and, Mr. Goeke, have you
13 received anything from the victim as far as restitution?
14       MR. GOEKE:  I have not, Your Honor.  I spoke to a
15 member of the Probation office about this issue, and my
16 understanding was that the victims were going to provide the
17 impact statement to probation prior to the sentencing, but I
18 have not seen an updated copy of that.  That's the only issue,
19 frankly, from the government's perspective, with the issue of
20 restitution, as to whether that number has been finalized or
21 not.  If it hasn't, the government would request additional time
22 to perfect that number, which will not affect the sentencing
23 proceeding today.
24       THE COURT:  I have talked to Probation this morning.
25 The victim has not provided any documentation, so I will agree

1  with the defense that that issue has not been proved.  I will
2  not grant additional time for the restitution.  So, therefore, I
3  will reduce by one level the offense level.  The victim had
4  adequate notice, had been contacted repeatedly by Probation, did
5  not provide any documentation, although the victim had indicated
6  that he had received that documentation, but did not complete
7  it.
8          MR. GOEKE:  I would just ask the court to inquire if
9  there's anyone present today who's a victim.  I'm not aware of
10 anyone who is, but if there's someone in the gallery.
11         THE COURT:  Is there anyone present today who's a
12 victim of this case involving James Cloud?  I see no one raise
13 their hands.
14         Mr. Goeke, do you want to be heard more on this?
15         MR. GOEKE:  There is a provision under 18 United
16 States Code, Section 3664, if the amount of restitution is not
17 readily cognizable by the time of sentencing, to allow the court
18 to set a date for final determination of the victim's losses.
19 That would be 3664(d) -- subsection (d)(5).  I would ask the
20 court do that and the allow the victims another opportunity to
21 provide the victim impact statement to determine the loss.  That
22 would not hold up the sentencing proceeding today, and it would
23 just allow them to -- there's no question there was a loss here.
24 I don't know the reason for them not providing a statement to
25 Probation, but I believe it would be appropriate for the court

1    to extend additional time for them to provide the court with
2    notice of what their total loss was.
3            THE COURT:  Mr. Hernandez?
4            MR. HERNANDEZ:  Your Honor, I guess for purposes of
5    today's proceedings, the enhancement can't be applied, and it's
6    our position it can't be applied, because the information hasn't
7    been provided.  And I think the court has ruled on that.
8            As far as another hearing to assess whether or not --
9    the amount of the restitution, Your Honor, I think that's
10   permitted by statute.  Mr. Cloud doesn't have to be present for
11   that, I don't believe, and it's not going to hold up today's
12   proceedings.
13           So the statute provides for that, Your Honor.  If the
14   court wishes to set this matter for a restitution hearing at a
15   later date, then so be it.  But as the court indicated, there's
16   been plenty of time, and they've been in contact with the victim
17   on several occasions.  I don't know why they would not have
18   provided that.
19           THE COURT:  This offense did occur May 25, 2010.
20           MR. GOEKE:  It did, Your Honor.
21           THE COURT:  I will not grant the continuance on the
22   restitution issue.  I think there has been sufficient
23   opportunity, and that information has not been forthcoming.
24           I think, then, am I correct in saying the total
25   offense level now is 24, criminal history category -- the score

```
 1   was 17 points, so criminal history category is VI.
 2             MR. GOEKE:  I think that's right, Your Honor.
 3             THE COURT:  Mr. Goeke, do you need a minute to review?
 4             MR. GOEKE:  I think it would be a one-point reduction.
 5             THE COURT:  Okay.  So the statutory provisions for
 6   Counts 1 and 2 would be that incarceration could be 10 years on
 7   either of those.  Guideline provisions are 110 to 137 months.
 8   Supervised release, under the statute, would be three years on
 9   Count 1 or Count 2.
10             Miss Dykstra, is this the victim?
11             MS. DYKSTRA:  No, Your Honor.
12             I just wanted to address briefly the offense
13   computation.
14             THE COURT:  Oh, thank you.  Please.
15             MS. DYKSTRA:  I think that the one-point reduction
16   does not affect the total offense level, because we're talking
17   about a multiple-count calculation.
18             THE COURT:  I see.
19             MS. DYKSTRA:  And the adjustment that we were speaking
20   of was in regard to Count 1.
21             THE COURT:  Okay.  Count 2 still carries the higher --
22             MS. DYKSTRA:  The higher of the guideline ranges.
23             THE COURT:  All right.  Thank you for correcting that.
24   I stand corrected.  Total offense level remains 25, criminal
25   history category is VI.
```

1    Guideline provisions for the sentencing range is still
2    110 to 137 months.  Supervised release is three years for Counts
3    1 and 2.  It's two to three years under the guideline range.
4    Under the statute, the fine is up to $250,000 on Counts 1 and 2.
5    Under the guideline provisions, it would be $10,000 to $100,000.
6    And there's a $100 special penalty assessment per count, for a
7    total of $200.
8             I believe that addresses all of the objections.  And
9    with those corrections, I will adopt the presentence report as
10   my findings of fact.
11            Mr. Hernandez, I will hear from you first, and then,
12   Mr. Goeke, and then Mr. Hernandez again.
13            MR. HERNANDEZ:  Thank you, Your Honor.
14            Your Honor, this case involves two very serious
15   charges, burglary of a residence, and possession of stolen
16   firearms.  There's no question that these offenses are serious,
17   and we recognize that.  And so does Mr. Cloud.  I think,
18   Your Honor, in trying to fashion a sentence in this particular
19   case, at first blush I think both Mr. Goeke and I were trying to
20   figure out what was going on in Mr. Cloud's life.  And as a
21   result of that, we were able to obtain some information and work
22   towards a resolution of this case via a Rule 11(c)(1)(C) plea to
23   some modified charges in this case.
24            The sentence we're requesting for both charges is 150
25   months, which is significant.  It's the most time that Mr. Cloud

1    would have spent incarcerated.  And as the court can see from
2    his criminal history, he's been incarcerated for significant
3    periods of his life, commencing at a very young age.
4            But what the court has been able to learn about
5    Mr. Cloud since this process began is that he's a young man who
6    has had a very troubling upbringing, Your Honor.  It's one
7    that's been full of neglect, abuse, substance abuse, emotional,
8    all kinds of abuse, Your Honor.  And that's alluded to in my
9    sentencing memorandum, as well as Dr. Young's report.
10           There's no question that Mr. Cloud is, as a result of
11   this upbringing, is before this court, at least my mind.
12   Essentially, he's been in a survival mode at a very young age.
13   And, so, because of that, the early onset of using drugs and
14   alcohol in his life, he's been in continual use of those
15   substances and trying to support those habits.  I think I
16   pointed out to the court that many of his convictions are
17   property-related crimes, which, as the court is aware, in the
18   court's experience, is that is pretty standard for somebody
19   who's addicted to drugs, to try to go and steal property, sell
20   it, and try to get money, and go back to using.
21           Mr. Cloud, Your Honor, has had a learning disability
22   that's affected him as a young boy, and now, even now, still has
23   a low intellectual abilities.  His cognitive abilities were
24   impacted based on alcohol abuse as a young, as a young boy.
25   And, so, he really didn't have a chance to participate in

1  school, also because of the transient nature of his life, and
2  learn something, and do something with his life.
3           He has indicated to me that he has had the opportunity
4  to obtain his GED.  He's short of -- just short of obtaining
5  that.  And that's one of his goals when he gets into the Bureau
6  of Prisons.
7           Your Honor, I could go on forever about what's gone on
8  in Mr. Cloud's life.  I think I've set that forth pretty clearly
9  in my sentencing memorandum.  And I think Dr. Young's report
10 speaks volumes.
11          I'd be more than happy to answer any more questions,
12 Your Honor, but I think, given Mr. Cloud's history, and
13 considering the 3553 factors in this case, that sentence is
14 appropriate, and we would ask the court to follow the
15 recommendation.
16          THE COURT:  I do have one question.  It doesn't relate
17 to what you've talked about, but in the 11(c)(1)(C) there was a
18 requirement or an agreement that, after any period of
19 incarceration, that Mr. Cloud impose in-patient substance abuse
20 treatment for a period of 6 to 12 months to follow the
21 defendant's sentence of incarceration as a term of the three
22 years of supervised release.  I certainly don't disagree
23 substance abuse treatment would be appropriate, but I am
24 informed by Probation that it is unlikely, after such a lengthy
25 period of incarceration, that any treatment facility would

1    accept him for in-patient treatment because they would view the
2    term of incarceration as a period of sobriety; thus, cancelling
3    any need for in-patient substance abuse treatment.
4              MR. HERZNANDEZ:  I think, Your Honor, in discussing
5    that part of the resolution in this case with Mr. Goeke, that I
6    had discussed that -- I don't know if that very issue, but the
7    issue as to how things would be in 10 years.  And what we had
8    thought, and Mr. Goeke can also provide an answer to the court,
9    is to leave that up to the discretion of the Probation office.
10             THE COURT:  Okay.
11             MR. HERNANDEZ:  So the reading of that condition would
12   be as approved, or as -- to the discretion of the Probation
13   office.  That way it's -- Mr. Cloud isn't in violation as soon
14   as he gets out of incarceration.  That's not what we're trying
15   to do, Your Honor.
16             THE COURT:  All right.  So you are basically amending
17   the 11(c)(1)(C)?
18             MR. GOEKE:  I think there's language in the agreement
19   to reflect it permissive of the court now.  If I'm wrong, we
20   would amend it.  Counsel is right.  We discussed this.  There
21   are a number of variables between now and 150 months.  Funding,
22   for one, availability, space, all that sort of thing.  So it
23   would be incumbent on the agreement, before it could be
24   effectuated, that the court is necessarily going to have
25   discretion as to what actually happens with that provision of

1  the agreement.
2          That's what the parties would intend, and what the
3  parties hope would occur.  Obviously, it's going to be subject
4  to the realities of Mr. Cloud's release.
5          THE COURT:  Thank you.
6          Mr. Goeke, I will hear from you.  Mr. Hernandez, if
7  you and Mr. Cloud would take a seat.
8          MR. GOEKE:  Thank you, Your Honor.
9          As the court is well aware, the defendant was facing,
10 if this charge was -- or as this case could have been charged,
11 the defendant would have been charged by the grand jury with
12 possession of a firearm as a prohibited person.  As the court is
13 aware, there was video evidence of this exact fact.  If he had
14 been charged in that regard, he would have faced a mandatory
15 term of 15 years, 180 months.
16         The parties have negotiated a resolution that the
17 government believes is in the interests of Mr. Cloud, as well as
18 the government.  150 months is a substantial sentence for
19 Mr. Cloud.  He's never faced this much time, by far.  But given
20 this criminal history, we believe it's appropriate.  Something
21 has to be done to break him of this history of criminality.  But
22 we're also understanding of his difficult past.
23         The evidence in this case was very clearcut.  We could
24 have proceeded to trial, proceeded to the grand jury with a
25 superseding indictment alleging the felon in possession charge.

1   I don't believe there's much doubt that the jury would have
2   returned a guilty verdict after viewing the videotapes of
3   Mr. Cloud possessing two weapons.
4            So we believe this sentence is reflective of the
5   defendant's difficult past, but it's also sufficient to protect
6   the community, and, hopefully, to allow Mr. Cloud an opportunity
7   to address his substance abuse issues, certainly, while he's
8   incarcerated, and get his life on track.
9            So we'd urge the court to accept this agreement.  It
10  is a substantial sentence.  It is higher than the guideline
11  sentence for the charges to which he has pled guilty, but it is
12  less than what he would have faced had he been convicted of
13  felon in possession.
14           THE COURT:  Thank you.
15           Mr. Hernandez, Mr. Cloud.  Mr. Hernandez, is there
16  anybody in the gallery who you want to have speak?
17           MR. HERNANDEZ:  If I may have a moment, Your Honor.
18           THE COURT:  Certainly.
19       (PAUSE)
20           MR. HERNANDEZ:  Your Honor, Mr. Cloud's mother is in
21  the courtroom, but she doesn't wish to address the court,
22  Your Honor.  This is a difficult moment for her.
23           THE COURT:  Certainly.  I understand.
24           Do you want to add anything, Mr. Hernandez, before I
25  hear from Mr. Cloud?

13

1          MR. HERNANDEZ:  I have nothing else to add,
2    Your Honor.
3          THE COURT:  Mr. Cloud, if there is anything that you
4    would like to tell me, I would like to hear it.
5          THE DEFENDANT:  I would.
6          THE COURT:  Okay.
7          THE DEFENDANT:  Well, actually, I don't know.  I think
8    I just got to take this time and learn to better my life, and
9    try to get into any schooling I can.  And hopefully I can keep
10   motivated as far as job wise when I get out.  That will be all.
11         THE COURT:  Okay.
12              I find this case very difficult.  I think this is a
13   condemnation of society.  I think society has failed Mr. Cloud
14   in a number of ways, and I take no pride in having been a member
15   of that society who did not provide some assistance and
16   protection when it would have been meaningful.
17              I am pleased to hear you, Mr. Cloud, say that you're
18   going to try and take this time to, I hope, finish your GED and
19   get some other training.  Somehow, in this agreement -- and I
20   understand that this has been a deal wrought with peril, and a
21   deal that is to try to ameliorate some of the criminal history
22   that you have had.  It's a significant amount of time, a longer
23   period of time than I wonder is really warranted.
24              But I will follow the plea agreement.  I will agree to
25   impose a sentence of 150 months, 120 months for Count 1,

1  followed by a consecutive 30 months for Count 2, three years of
2  supervised release for Count 1, three years of supervised
3  release for Count 2, to run concurrent.
4        I will waive the fine.  I am going to waive
5  restitution.  There has not been a showing made of the amount.
6  There is a mandatory $100 special penalty assessment per count,
7  for a total of $200 special penalty assessment.
8        I hope that somehow this incarceration period provides
9  you some assistance that was not provided to you at previous
10 times in your life.  I'm concerned that your repeated criminal
11 history is, in part, just to try to almost warehouse yourself so
12 that you don't have to deal with the challenges of life.  You
13 are still a young man.  You will still be a relatively young man
14 when you are released from incarceration.  If you are able to
15 take this time to get some training, to be free of drugs, to
16 learn some skill sets, some tools, gather some tools for dealing
17 with the challenges that you're going to face when you get out
18 of prison, then I hope that you will take those tools and really
19 make a life for yourself that has been deprived up to this time.
20       I am going to impose some special conditions,
21 including having you actively participate in a GED program, as
22 directed by the supervising officer, if you are not completed
23 with that by the time that you're out of incarceration;
24 submitting your person, residence, office, or vehicle to a
25 search conducted by the U.S. Probation officer at a sensible

1    time and manner based upon reasonable suspicion of contraband;
2    completing a mental health evaluation, following any treatment
3    recommendations of the evaluating professional, which do not
4    require forced or psychotropic medication and/or in-patient
5    confinement absent further order of the court, allowing
6    reciprocal release of information between the supervising
7    officer and treatment provider, and contributing to the cost of
8    that treatment according to your ability to pay; undergoing a
9    substance abuse evaluation and, if indicated by a licensed,
10   certified treatment provider, entering into and successfully
11   completing an approved substance abuse treatment program, which
12   could include in-patient treatment and aftercare.  You shall
13   contribute to the cost of treatment according to your ability to
14   pay, and allow full reciprocal disclosure between the
15   supervising officer and the treatment provider.
16           You are ordered to abstain from use of illegal
17   controlled substances, and you shall submit to urinalysis
18   testing as required by the supervising officer, but no more
19   frequent than six tests per month.  You are ordered to abstain
20   from alcohol and submit to testing, including urinalysis and
21   Breathalyzer, as directed by the supervising officer, but no
22   more than six times per month.  And you shall not enter into or
23   remain in any establishment where alcohol is the primary item of
24   sale.
25           And you shall have no contact with the victim or any

1  member of his immediate family in person, by letter, or other
2  communication devices, audio or visual devices, or through a
3  third party, unless authorized by the supervising officer.  You
4  shall not enter the premises or loiter within 1,000 feet of the
5  victim's residence or place of employment.
6          During those three years of supervised release, these
7  conditions will serve as a hammer over your head, and if you
8  violate any of those, especially any of the drug use or alcohol
9  use, you could be reincarcerated up to a period of three years,
10 without any credit for time served.
11         Mr. Hernandez, is there any reason I should not impose
12 this sentence?
13         MR. HERNANDEZ:  No, Your Honor.
14         THE COURT:  Mr. Goeke?
15         MR. GOEKE:  No, Your Honor.  Thank you.
16         THE COURT:  The sentence is imposed as outlined.  I
17 wish you luck.  I hope that you will take advantage of your time
18 in the federal facility, and take what it offers as much as
19 possible.  Good luck.
20         MR. HERNANDEZ:  Your Honor, I had requested placement
21 at Sheridan in my sentencing memorandum, if the court could
22 recommend that.
23         THE COURT:  I will certainly recommend that the inmate
24 be placed at Sheridan.  However, I do not control the Bureau of
25 Prisons, so it's not authoritative.

```
 1                 Does Mr. Cloud want to ask you something?
 2                 MR. HERNANDEZ:  If I could have a moment.
 3                 THE DEFENDANT:  Well, why is that?  I don't want to go
 4      there.
 5                 THE COURT:  You don't want to go to Sheridan?
 6                 THE DEFENDANT:  I would say I would be willing to go
 7      anywhere, but...
 8                 MR. HERNANDEZ:  Go anywhere?  I guess --
 9                 THE COURT:  No recommendation.
10                 MR. HERNANDEZ:  -- no recommendation, Your Honor,
11      except credit for time serve.
12                 THE COURT:  Credit for time served will be
13      recommended.
14                 Okay.  Thank you.
15                 MR. HERNANDEZ:  Thank you, Your Honor.
16            (ADJOURNMENT AT 9:37 A.M.)
17
18
19
20
21
22
23
24
25
```

18

REPORTER'S CERTIFICATE

I, LYNETTE WALTERS, Registered Professional Reporter, Certified Realtime Reporter, and Certified Court Reporter;

DO HEREBY CERTIFY:

That the foregoing amended verbatim report of proceedings, Pages 1 through 17, contains a full, true, complete and accurate transcription of my shorthand notes of all requested matters held in the foregoing captioned case, including all objections and exceptions made by counsel, rulings by the court, and any and all other matters relevant to this case.

DATED this 16th day of September, 2019.

s/ Lynette Walters
LYNETTE WALTERS, RPR, CRR, CCR
CCR NO. 2230